NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1679
_____

UNITED STATES OF AMERICA,

v.

LARON HOLLAMAN,
            Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cr-00189-001)
District Judge: Honorable Cathy Bissoon
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 21, 2020

Before: HARDIMAN, RENDELL, and FISHER, *Circuit Judges*.

(Filed:  April 30, 2020)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Laron Hollaman appeals an order of the District Court denying his motion to suppress evidence following his conditional guilty plea to unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). We will affirm.

I

The District Court held a hearing on the motion to suppress. Officer Richard Kadlecik, a ten-year veteran of the Robinson Township Police Department, testified for the Government, and Hollaman testified on his own behalf. Their testimony conflicted in material ways, so the case turns on the District Court's finding that Kadlecik was more credible than Hollaman.

Officer Kadlecik testified he was driving his marked police car in an area known for narcotics activity and prostitution when he observed a young white man pacing in the parking lot of the Hilltop Inn. Wondering whether the man was either waiting for a drug deal or a ride, Kadlecik doubled back and saw a car with heavily tinted windows pull into the Hilltop Inn parking lot. The man stopped pacing and walked directly to the passenger side of the vehicle, got into the front seat, and exited "no more than" thirty seconds later. App. 75. The vehicle left the parking lot immediately and the man walked away.

Suspecting he had just witnessed a drug deal, Officer Kadlecik ran the vehicle's license plate and followed it to a nearby gas station. The car parked at a gas pump, and Kadlecik parked parallel to it. As he exited his cruiser, Kadlecik approached the driver (Appellant Hollaman) and asked where he had been before he arrived at the gas station.

2

Hollaman said he was meeting a cousin at a nearby hotel, and Kadlecik asked to see Hollaman's driver's license.

After reviewing the license, Kadlecik reported what he observed in the parking lot, which prompted Hollaman to admit he had lied about his cousin. Hollaman also admitted to selling marijuana to the man in the hotel parking lot and that he still had a small bag of cocaine in his car. Hollaman retrieved the cocaine from the car's center console and gave it to Kadlecik.

Hollaman then became anxious, which caused Officer Kadlecik to believe there may be more contraband in the car. They moved to the rear of the vehicle and Hollaman told Kadlecik he had just finished "doing some time" in state prison for a gun charge. App. 84. Kadlecik continued questioning Hollaman, who admitted there were two loaded firearms under the front passenger seat of the car. Kadlecik then handcuffed Hollaman and called for backup. Once backup arrived, Kadlecik walked directly to the passenger side of Hollaman's vehicle and located the firearms.

Hollaman disputed several aspects of Officer Kadlecik's testimony. He testified that he dropped off his relative at the hotel before driving to the gas station. Hollaman also denied letting a man into his car at the hotel or selling marijuana to anyone. And he denied ever telling Kadlecik that he did so. According to Hollaman, Kadlecik refused to return Hollaman's driver's license during the stop and repeatedly asked whether he sold drugs to the man in the parking lot. Hollaman also testified Kadlecik ran his license plate during the stop.

3

Perhaps most significantly, Hollaman denied telling Officer Kadlecik he possessed cocaine and firearms. And he said he went into the center console to retrieve his vehicle's registration, not a bag of cocaine. To support his testimony, Hollaman introduced a surveillance video from the gas station. Although this video recorded the entire stop, there is no audio of the interaction. Even so, Hollaman used the video throughout his testimony because it contradicts some of Kadlecik's testimony about the stop. For example, the video shows that Hollaman approached Kadlecik before he exited his patrol car. It also suggests Kadlecik ran Hollaman's license plate during the stop.

After considering the testimonial and video evidence, the District Court credited most of Officer Kadlecik's testimony and denied the motion to suppress.

II[1]

Hollaman first argues that even if Officer Kadlecik testified truthfully regarding the activity at the Hilltop Inn, he lacked reasonable suspicion to conduct an investigatory stop at the gas station. We disagree.

Based on his decade of experience, Officer Kadlecik thought the young white man pacing in the Hilltop Inn parking lot was waiting on either a ride or a drug deal. Because the man spent only thirty seconds in the car with the tinted windows, Kadlecik naturally eliminated the innocuous option (waiting for a ride) in favor of the nefarious option (a

---

[1] The District Court had jurisdiction under 28 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary review over the District Court's application of law to those facts." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011).

drug deal). Officer Kadlecik's determination, when considered in light of his experience and common sense, is entitled to "considerable deference." *See United States v. Brown*, 765 F.3d 278, 290 (3d Cir. 2014) (quoting *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006)). So the District Court did not err when it concluded that the events at the Hilltop Inn established the "minimal level of objective justification" needed to support reasonable suspicion. *United States v. Graves*, 877 F.3d 494, 498 (3d Cir. 2017) (citation omitted).

## III

Having concluded that Officer Kadlecik had reasonable suspicion to investigate Hollaman at the gas station, we turn to the question whether Kadlecik obtained probable cause to search Hollaman's vehicle. Hollaman argues the District Court clearly erred when it credited Officer Kadlecik's testimony in support of its probable cause determination. Again, we disagree.

As the District Court noted, there are some "modest discrepancies" between Officer Kadlecik's testimony and the surveillance video Hollaman presented at the hearing. App. 1. But these discrepancies do not "plainly contradict[]" Kadlecik's testimony. *See United States v. Davis*, 726 F.3d 434, 440 (3d Cir. 2013). For example, the basis of Kadlecik's probable cause determination was Hollaman's incriminating statements about selling marijuana, possessing cocaine, and having two loaded firearms in his car. The video does not contradict Kadlecik's testimony regarding those statements. In fact, the video *supports* his version of events insofar as it shows him looking for the two firearms under the front passenger seat immediately after talking to Hollaman. This

5

targeted search is consistent with Officer Kadlecik's incident report, in which he said that Hollaman told him exactly where the guns were located.

Because Hollaman failed to produce evidence which leaves us with the "definite and firm conviction" that the District Court erred in crediting Officer Kadlecik's testimony, *see United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (internal citation and quotation marks omitted), we will affirm the District Court's order denying the motion to suppress.[2]

---

[2] Hollaman's additional argument that Kadlecik lacked probable cause to seize him and search his vehicle fails because it is based on the invalid premise that the District Court clearly erred when it found that Hollaman incriminated himself.